Judge Mills
delivered the opinion of the Court.
The appellees, as executors of Daniel Wade, sold a house and lot to the appellant, in obedience to the directions of the will of the decedent, and took notes for the purchase money with personal security, and also a mortgage from the appellant, on the same estate, they having previously conveyed to him.
The appellant paid one half the purchase money, and failed to pay the remaining half when it became due, and thereupon the appellees brought their action at law for that moiety, and recovered a judgment, which was replevied.
The appellant then brought this bill to set aside the contract, alleging a deficiency in the quantity of ground and defect of title.
The executors answered, insisting upon the validity of the title sold by them, and denying any deficiency.
Cross bill on the mortgage for the foreclosure.
Decree of the circuit court.
Decree dismissing Martin’s bill for rescission approved.
Itisthe general rule that thejurisdietion of thfe chancellor in foreclosing a mortgage is merely to enforce the lien in rem., and not decree the demand in personam.
Exceptions to therulewbero the chancellor may decree in personam of the •whole demand.
They also make their answer a cross bill, and by appropriate allegations and interrogatories, set up their mortgage against the estate and pray a, decree of foreclosure, and sale of the mortgaged premises, in discharge of their judgment at law.
The court below, on hearing, dismissed the hill of the appellant with costs, decreed the amount of the money secured by tbe mortgage and their judgment at law to be paid by the appellant; that his equity of redemption be foreclosed, and the estate sold in satisfaction of the decree and the judgment at law, the decree and judgment being for the same money, from which decree this appeal is prayed.
We have not thought it necessary to set out and discuss the pretended equity set up in this bill of the appellant; because it is not true in fact, or valid in law, and to go into it in detail, would be no use even to the parties themselves, and the decree dismissing the appellant’s bill is indubitably correct.
The appellees have also clearly shown themselves entitled to a foreclosure of the mortgage and sale of the mortgaged premises, and had the decree done this properly, and went no further, it would have met our entire approbation. But it has gone so much further, that it cannot be sustained.
The general rule, as stated by this court, in Downing vs. Palmateer, 1 Monroe 69, is well settled, that the business of the chancellor in foreclosing a mortgage, is simply to enforce the lien in rem, and not decree the demand in personam, and whenever the estate is subjected to the demand, the power of tbe chancellor over the subject ceases, so that all decrees for the amount before the sale, or for balances after the sale, against the person of the defendant, are generally improper.
We say generally, because, to the rule there are no doubt, well founded exceptions, sucb as cases where the chancellor has original or exclusive jurisdiction of tbe subject matter, or is called upon to remove some impediments to legal process; but in cases where the demand is purely legal, and the party has legal remedies, he must resort to those *79 remedies, to recover the original amount or balances due, after the chancellor has ceased to act.
Specific perth^enforce"ment of liens are tlie fheThancel ior>s jurisdiction of contracts foi lawl
But when vendor has conveyed and taken amortgage for the price, and recovers a judgment at law, and then resorts to equity to foreclose his mortgage, the decree shall merely subject the land;
jj0(]e of )n,0. ceeding to foreclose (lu> dempüon, and to sell the 'mortgaged cst:iíü slairil-
It is true, this is a contract for lands, over as far as specific performance is concerned, the chancellor has jurisdiction, and of course, will sometimes decree the purchase money to be paid, as readily as a court of law will render judgment for it, or will enforce a lien, especially those kind of liens which exist between vendor and vendee for the purchase money, and on these two points of specific performance and enforcement of liens, hangs the jurisdiction of the chancellor over contracts for the sale of real estate, and it maybe plausibly urged, that as this is a contract of that class, and the application is to enforce an express lien for the price of the estate sold, the chancellor had jurisdiction to decree the amount due, as well as to enforce the lien in discharge of it.
To this it may be answered, that the purchase money here was secured by legal securities, to which, legal remedies belong, and the party had asserted his legal remedy, and obtained judgment and execution. If therefore, it should he conceded that the jurisdiction of a court of equity, to enforce this demand, is concurrent with the court of common law, yet as the latter has first taken hold of the subject, and has ended it by judgment, the concurrent power of the chancellor ends there also, and there is no reason why the chancellor should take up the subject again, and re-try it. Thé recovery is already complete at law, by the parties own choice, and the chancellor was therefore incorrect, in giving him a decree in addition to the judgment, and ought only to have enforced the lien in discharge of the demand.
But this is not the only impropriety in this decree. In other respects it conforms to the erroneous .practice of the country in decrees, enforcing mortgages and other liens; that is, not only to give a positive decree for the money, hut to direct that if it is not paid by a certain day, then at once to direct a commissioner appointed to proceed to sell the estate, and report, and the proceedings are kept *80 open and the cause remains on the docket till after the report is made, and then perhaps a further dedecree thereon. We have frequently had occasion to remark on the improprieties of such decrees, and will repeat, for the purpose of correcting the practice, some of the errors of the practice.
The first duty of the chancellor on such trials, is to ascertain the amount due, and when the mortgage is given to indemnify against responsibilities of the mortgagee, for the mortgagor, if there have been partial payments by the mortgagor, or such like, ascertaining the demand may involve difficult matters of account, which may require the aid of a commissioner.
In this case however, the amount due is ascertained on sight, by the judgment at law, on which there is not a single credit claimed.
After the amount is ascertained, the decree ought to be what may be technically styled a decree nisi— that is, unless the mortgagor pay the sum fixed by the decree as due, on or before a certain day, (which day ought to be in term time) then the equity of redemption shall be forever barred and foreclosed. This day given has also in different countries been more or less distant, in some it is six months; in this country, generally from one term to another, and may, on good cause shewn, in special cases be enlarged. If at the end of this period, the money with the costs is paid, the chancellor will end the matter by decreeing the redemption and directing the mortgagee to release the estate. If the money is not paid, then it is the duty of the chancellor to decree a positive foreclosure, which precludes any redemption, whereby the estate becomes the proper estate of the mortgagee unclogged by any equity; or if the case so require, a sale, is added thereto, and a commissioner appointed to execute it, and in his report the proper credit is made by decreetal order, and thus, not only the judicial but ministerial acts effectuating the demands are superintended by the court. But to decree the sum first; then a sale conditionally, or then appoint a commissioner, and make him deputy chancellor, with powers to look *81 into the payment, and determine whether it is properly made; and whether it-is proper to sell or not,, although the money is tendered, and if the money is paid, to leave the mortgage standing not released, is a practice that cannot receive the approbation of this court.
No damages are allowed by the statute on the dissolution of an injunction to a decree.
Hardin, for appellant; Crittenden and Darbu, for appellees.
We would add, that the party complainant in this case had obtained a previous injunction, which had been dissolved with ten per cent damages. This bill did not enjoin the original judgment, but only the ten per cent damages given on the former dissolution. On the dissolution of this injunction, ten per cent damages was given on the ten per cent of the first dissolution. This was erroneous: The ten per cent given on the dissolution of the first injunction was not given by a judgment at law, but by the decree of the chancellor, and it has been determined by this court, on grounds which still have our approbation, that the ten per cent to be given by the act of assembly on the dissolution of injunctions, applies to judgments at law only, and not to injunctions enjoining decrees in chancery. See Head, &c. vs. Perry, &c. 1 Monroe, 253. The decree for this last ten per cent, cannot therefore be sustained.
The decree must be reversed with costs, and the cause be i-emanded to the court below, to enter such, decree in the first instance, and then such subsequent decrees and orders, as may accord with this opin7 ion.